Buena Vista Dairy, Inc., Petitioner, *v.* Puerto Rico Labor Relations Board, Respondent.

Nos. JRT-65-8, JRT-65-9.     Decided June 2, 1967.

*Sarah Torres Peralta* and *Ginoris Vizcarra* for petitioner. *J. B. Fernández Badillo, Solicitor General, Luis M. Rivera Pérez,* and *Marta Ramírez Vera* for respondent.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RIGAU delivered the opinion of the Court.

The question raised in these petitions is whether or not the respondent-employer committed an unfair labor practice consisting in the violation of a collective bargaining agreement.[1]

The collective bargaining agreement in force on the date on which this controversy arose created, in its Art. VI, a Grievance Committee to settle the disputes which would arise during the effectiveness of said agreement. The Committee was composed of two members representing the employer and two representing the Union. Since it is directly connected with this controversy we shall cite, *verbatim*, the following subdivisions of Art. VI:

"4. The worker or group of workers affected, shall present the complaint to the Union, which shall try to solve the problem with the employer. If the complaint is not satisfactorily decided during the subsequent five days, the same shall be submitted to the Grievance Committee.

Should the Grievance Committee fail to arrive at an agreement satisfactory to both parties within ten (10) days from the date on which it was notified, the case shall be

---

[1] Section 8(1)(f) of the Puerto Rico Labor Relations Act, 29 L.P.R.A. § 69(1)(f), declares an unfair labor practice the fact that an employer violates the terms of a collective bargaining agreement.

submitted to an arbitrator, who shall be appointed by the Conciliation and Arbitration Bureau of the Department of Labor of Puerto Rico. The provisions in this Article shall not preclude any worker or group of workers from trying to settle personally with the employer any problem which may arise.

5. Pursuant to this Article the term to submit a matter to the arbitrator will be ten (10) days after the term fixed in the preceding subdivision (4) has elapsed and said term shall be of a jurisdictional nature."

A charge having been filed by the United Steelworkers of America, AFL-CIO, hereinafter designated as the Union, before the Puerto Rico Labor Relations Board, the latter issued the complaint on October 20, 1964.

The corresponding hearing was held before the trial examiner of the Board and the latter rendered its report on May 27, 1965. The trial examiner concluded that respondent had not violated the collective agreement and recommended to the Board the dismissal of the complaint presented in this case. By its decision and order of June 23, 1965 the Board concluded that respondent had committed an unfair labor practice consisting in a violation of the terms of the collective bargaining agreement in refusing to attend the meeting of the Grievance Committee for the purpose of elucidating the question relating to the layoff or discharge, whichever the case, of employee Juan Paín Vargas.

In petition No. J.R.T. 65-9 the Board requests that this Court enforce its order and in petition No. J.R.T. 65-8 respondent requests that we set it aside.[2]

The problem before us boils down to deciding whether the trial examiner was correct in determining that the Union did not follow the procedure established in Art. VI of the collective bargaining agreement or whether, on the contrary, the position assumed by the Board is correct in determining

---

[2] They appeal to us, relying on 29 L.P.R.A. § 70(2)(a) and *ibid.* 70(2)(b) respectively.

that respondent refused to attend the meeting of the Grievance Committee, thus precluding the Committee from meeting to consider the controversy which originated this case.

The facts may be summarized as follows: Paín ceased his work on November 14, 1963. "Immediately" the employee communicated with the Union and the latter's representative, Cintrón, communicated with respondent.[3] Respondent's position is that Paín had abandoned his work and the former refused to reinstate him.

This first conversation between the Union's representative and respondent's manager took place on the 14th or 15th of November 1963. From this date until January 7, 1964 nothing occurred on this particular. It was on January 7, 1964, 53 days after respondent's refusal to reinstate Paín, that the representative of the Union again conferred with respondent's manager. Respondent's position was the same. It refused to bargain because it understood that Paín had abandoned his work. In view of this situation the Union requested the Department of Labor to designate an arbitrator. The arbitrator was designated and he held a hearing on May 19, 1964. The question submitted to the arbitrator by the parties was the following: "To determine whether or not the arbitrator has jurisdiction to entertain the merits of this case." (Arbitration Hearing, p. 8.)

The decision of the arbitrator was the following:

"Since the provisions of Paragraph 4 of Art. VI of the agreement in force between the parties in this case were vio-

---

[3] The record is not clear as to whether said step was taken on November 14 or next day. The respondent employer states in its petition that the employee ceased his work on the 14th of November and that "immediately" the Union requested his reinstatement. In his findings of fact the trial examiner says that the worker took up the matter "immediately." At a hearing before the arbitrator the respondent-employer states through its attorney "we agree that the last day worked was November 14, 1963 and any incident which might have occurred must have been on November 15, 1963." (Record, Arbitration Hearing, p. 2.)

lated, because the complaint concerning Juan Paín Vargas originating on November 14, 1963 was not submitted to a Grievance Committee as provided in the agreement, it is determined that the arbitrator does not have jurisdiction to entertain the case of the worker Juan Paín Vargas."

It was on May 21, 1964, subsequent to the arbitration proceeding requested by the Union, that the latter requested a meeting of the Grievance Committee. Respondent refused to submit the matter to the Committee on said date. On August 31, 1964 the Union again requested a meeting of the Committee to which respondent again refused. The Union presented the charge against respondent in the Board on June 5, 1964 and on October 20 of said year the Board filed the complaint.

We must return to Art. VI of the collective bargaining agreement which creates the Grievance Committee, providing the procedure to be followed when there arises a labor dispute. We refer now to paragraphs Nos. 4 and 5 of said Art. VI which are copied above. Paragraph 4 provides that the affected worker "shall present the complaint to the Union, which shall try to solve the problem with the employer. If the complaint is not satisfactorily decided during the subsequent five days, the same shall be submitted to the Grievance Committee."

Said paragraph 4 further provides that "Should the Grievance Committee fail to arrive at an agreement satisfactory to both parties within ten (10) days from the date on which it was notified, the case shall be submitted to an arbitrator, who shall be appointed by the Conciliation and Arbitration Bureau of the Department of Labor of Puerto Rico." Paragraph No. 5 of the aforecited Art. VI of the agreement provides that after the lapse of the ten days that the Grievance Committee has to settle the problem there is a term of ten extra days to submit the problem to the arbitrator.

The uncontroverted facts show that the employee notified the Union and that the Union communicated with respondent. They also show that more than the five days provided in the aforecited paragraph 4 to settle or to try to settle the dispute with the employer had elapsed. After the lapse of said five days it was incumbent on the Union to formally request the meeting of the Grievance Committee and submit the problem to the latter.

■ Article VI of the agreement has the defect that in its paragraph No. 4 it does not provide for a term to submit the problem to the Grievance Committee when the intent to settle the problem with the employer has failed. It should be noted that paragraph No. 4 of said Art. VI sets a term of 5 days for that intent to solve the problem with the employer. In the event the intent to settle the problem with the employer fails, as it occurred in this case, Art. VI does not provide for a term to submit the problem to the Grievance Committee. It only provides that the problem will be submitted to said Committee. In the absence of an express provision of the agreement limiting said term to a definite number of days, we are forced to conclude that said term must be a reasonable one. It would be unreasonable for the workers to presume that said term is only a few hours, but it would also be unreasonable for the employer to presume that said term is several months. To leave labor controversies pending for submission to the Grievance Committee for long or indefinite periods does not promote industrial peace—one of the objectives of the Labor Relations Act and of the proceedings of collective bargaining and arbitration.

In this case the Union initiated its conversations with the employer on November 15, 1963. Even excepting Saturday the 16th and Sunday the 17th, the period of five days provided in paragraph No. 4 of Art. VI to "try to solve the problem with the employer" expired on the 22nd of said month and year. The proper thing to do then was to present

the problem before the Grievance Committee. Since, as previously indicated, the agreement does not provide a term for submitting the problem to the Committee, we must conclude, as a practical question, that such term must·be a reasonable one.

■ On May 21, 1964, after the arbitrator declared himself without jurisdiction, the Union requested the meeting of the Grievance Committee. Since, as we have seen, the period to discuss the problem with the employer had expired on November 22, 1963, from that date to the date on which the Union requested the meeting of the Grievance Committee (May 21, 1964) six months less one day had elapsed. Unless otherwise agreed, six months is too long a period to appeal to the Grievance Committee from the employer's unilateral determination. It cannot be considered reasonable. ′

We take notice that at the hearing before the arbitrator the representative of the Union, Cintrón, stated that he believed that the steps provided in the agreement were substantially complied with and he stated that the Union did not submit the case to the Grievance Committee because respondent's behavior made it impossible to take that step. Cintrón's error was to believe that the employer's unilateral decision had put an end to the problem and that his next step was to resort to the arbitrator. He disregarded the Grievance Committee. He intended to pass the problem to the Department of Labor without previously giving an opportunity to the process of discussion and bargaining made possible by the Grievance Committee.[4]

At the arbitration hearing, Colón, respondent's manager, and the person with whom Cintrón had been communicating on this matter, substantially testified that he

[4] The agreement provides that should the Grievance Committee fail to arrive at an agreement satisfactory to both parties within 10 days, the case shall be submitted to an arbitrator, who shall be appointed by the Department of Labor of Puerto Rico. Article VI(4).

(Colón) had answered to Cintrón that Paín had abandoned his work and that he would not be reinstated in his position. It was from said determination of the employer that they should have resorted to the Grievance Committee and not to the arbitrator.

■ The record shows that respondent's position at the arbitration hearing was that respondent would not reinstate Paín in his position, but that if its attendance to the meeting of the Grievance Committee had been requested it would have attended the same. Irrespective of whether the position assumed by respondent's manager at the arbitration hearing was sincere or not, the truth is that the Union was not diligent in failing to formally submit the problem to the Grievance Committee after the intent to settle the problem with the employer had failed, as provided in Art. VI of the agreement. During said initial conversations between the Union and the employer the position of the employer was final and explicit. It refused to reinstate Paín in his work. In view of said evident refusal it was incumbent on the Union to diligently submit the problem to the Grievance Committee. If it did not succeed there, then, pursuant to the aforecited Art. VI of the agreement, it was proper to request the Department of Labor to designate the arbitrator. The Union disregarded the procedure prescribed in the agreement and it was not until six months later when those other endeavors failed that it wanted to resort to the Grievance Committee. Since we would not have permitted the employer to indulge in such gross deviation from the procedure stipulated in the collective bargaining agreement, we likewise cannot permit it to the Union.

■ Our duty is, in general, to impart justice; and particularly in these cases, we must impart to the labor collective bargaining and to the procedures produced thereby, a seriousness and equanimity which shall make them re-

spectable and respected. We believe that in this manner we contribute to industrial peace, since imparting seriousness and obligatoriness to the product of collective bargaining we create a measure of certainty in labor laws which is desirable. That certainty, we believe, shall inspire confidence in the contracting parties, in the sense that their contracts shall actually have the force of law between them. That, we think, is desirable for both parties and, as we said, at the same time tends to promote industrial peace. *Pérez* v. *Water Resources Authority*, 87 P.R.R. 110, 116 (1963); *Rivera* v. *Land Authority*, 83 P.R.R. 251, 257 (1961); *Textile Workers Union* v. *Lincoln Mills*, 353 U.S. 448 (1957), followed in *General Electric Co.* v. *Local 205, United Electrical Radio and Machine Workers of America*, 353 U.S. 547 (1957), and in *Goodall-Sanford* v. *United Textile Workers of America*, 353 U.S. 550 (1957).

■ The conflicting demands of security and certainty on the one hand, and the flexibility and possibilities of adjustment to changing reality on the other are consubstantial parts of the problematics of live law. Both qualities—certainty and flexibility—are desirable at law. It must be easy to notice the difficulty to reconcile them when raised before the jurist and the judge, especially the latter, who is the one who has to struggle with the problem not only in the theoretic field but also in the eminently practical field of producing solutions for real and concrete cases. The responsibility of maintaining the proper balance between the two conflicting demands aforementioned rests with the courts. Frequently we have to try to make a synthesis of said antithesis. In this field there are no perfect solutions. The best we can do is to settle the conflict in the manner which best serves the interests in conflict and all compatible with law and justice. The interests in conflict are not, of course, only those represented by the litigants; said term also in-

cludes the necessity of a rational juridical law, the general interest and, as we have suggested, the moral and social value which we call justice.[5]

■ Although we agree with the contentions of the Board in its decision as to the purposes of the Grievance Committee and the institution of arbitration, and as to the attitudes which should prevail in order that said procedures and said institutions may function justly and adequately in the presence of the facts of this case, we must conclude that respondent did not commit the unfair labor practice charged.

Decision and Order No. 392 entered by the Labor Relations Board in this case is set aside.

---

[5] Pound, Interpretations of Legal History 1 (1923); Kessler, "*Theoretic Bases of Law*" in Landmarks of Law, ed. by Hensen (1960). Beacon Paperback 13–14 (1966); W. Friedmann, Legal Theory 32 (4th ed. 1960); Castán, *Teoría de la Aplicación e Investigación del Derecho* 356 (1947); Cardozo, The Nature of the Judicial Process, Lecture III (1921); Paton, Jurisprudence 169 (2d ed. 1951).